**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Presstek, Inc.**</u>

    **v.**                                    Case No. 05-cv-65-PB
                                                Opinion No. 2007 DNH 044

<u>**Creo, Inc. and Creo Americas, Inc.**</u>

<u>**MEMORANDUM AND ORDER**</u>

Creo, Inc. and Creo Americas, Inc. (collectively "Creo")
have moved to strike supplemental expert disclosures filed by
Presstek, Inc. on the ground that they were filed after the
parties' agreed-upon deadline for expert disclosures.  Presstek
denies that the disclosures were late and alternatively claims
that they should not be stricken because it was justified in
making the disclosures when it did, Creo was not unfairly
prejudiced by the late disclosures and, in any event, a less
drastic sanction is all that is necessary under the
circumstances.

## I.  <u>BACKGROUND</u>

### A.  <u>The Infringement Claim</u>

Presstek is the owner of U.S. Patent No. 5,353,705 (filed Sept. 22, 1993) ("the '705 Patent"), entitled "Lithographic Printing Members Having Secondary Ablation Layers For Use With Laser Discharge Imaging Apparatus."  The '705 Patent discloses a multilayer lithographic printing plate suitable for laser imaging.  The '705 Patent's sole independent claim reads:

> 1. A lithographic printing member directly imageable by laser discharge, the member comprising:
>    a. a topmost first layer; and
>    b. a second layer underlying the first layer, the second layer being characterized by ablative absorption of laser radiation;
>    c. a third layer underlying the second layer, the third layer:
>       i.  being substantially transparent to the laser radiation;
>       ii. being ablated only partially in response to ablation of the second layer; and
>       iii. differing from the first layer in its affinity for at least one printing liquid selected from the group consisting of ink and a fluid that repels ink.

In the underlying patent infringement action, Presstek has sued Creo, claiming Creo's lithographic printing plate, the Clarus WL, infringes the '705 Patent because it is comprised of:

(1) a topmost silicon layer, (2) an underlying second layer made of carbon black/nitrocellulose which fully ablates[1] during imaging, and (3) an underlying third layer made of amorphous Polyethlene Terephthalate ("PET") which partially ablates in response to heat generated during ablation of the carbon black/nitrocellulose layer.  The parties disagree as to whether the Clarus WL has a third layer of amorphous PET and, if so, whether the third layer partially ablates during the laser imaging process.

B.   **Discovery Plan**

A court-approved Amended Discovery Plan sets the deadlines for expert disclosures in this case.  (Doc. Nos. 19, 54).  The initial Discovery Plan includes a paragraph entitled "Dates Of Disclosure of Experts And Experts' Written Reports And Supplementations."[2]  (Doc. No. 19 at 5).  The paragraph states

--------

[1]  The '705 Patent defines "ablate" to mean "decomposes into gases and volatile fragments."  '705 Patent col.5 ll.16-19.

[2]  The caption is taken from Civil Form 2, "Sample Discovery Plan," which is appended to the Local Rules.  The form calls for the specification of expert disclosure dates for plaintiffs and defendants as well as any agreed-upon dates for supplemental disclosures.

> The parties will exchange case-in-chief
> testifying expert reports on issues for which
> each party bears the burden of proof (e.g.,
> patent infringement and damages for
> Plaintiff, patent invalidity for Defendants)
> on February 6, 2006.  The parties will
> exchange rebuttal testifying expert reports
> on issues for which each party does not bear
> the burden of proof (e.g., patent validity
> for Plaintiff, patent non-infringement and
> damages for Defendants) on March 8, 2006.
> Depositions of testifying experts will occur
> within the following 30 days.

The Magistrate Judge subsequently approved an Assented-To Motion To Amend the Discovery Plan, which set September 15, 2006 as the date for the completion of discovery and extended the expert disclosure dates to July 21, 2006 for initial expert reports and August 18, 2006 for rebuttal expert reports.  (Doc. No. 54).

**C.   Dr. Gido's Initial Infringement Report**

In accordance with the amended discovery plan, Presstek disclosed a report prepared by its infringement expert, Dr. Samuel P. Gido, on July 21, 2006.  (Presstek Opposition to Motion for Summ. J., Ex. 2, Doc. No. 60-4 ("Gido I")).  In preparing the report, Dr. Gido employed several different techniques to examine both imaged and unimaged samples of the Clarus WL.  Using transmission electron microscopy ("TEM") on an unimaged sample, Dr. Gido concluded that the Clarus WL includes a topmost silicone

-4-

layer and an underlying second layer of carbon
black/nitrocellulose, which together measure 0.5 microns thick.
Through selected area electron diffraction ("SAED"), he also
determined that the Clarus WL has a 6-7 micron thick layer of
amorphous PET between the carbon black/nitrocellulose layer and a
semi-crystalline PET substrate.  Dr. Gido also used scanning
electron microscopy ("SEM") and atomic force microscopy ("AFM")
on an imaged sample to measure the depth of the features that
result from imaging.  Using SEM, Dr. Gido obtained depth
measurements ranging from  1.3 to 2.0 microns, depending upon the
location sampled.  Using AFM, Dr. Gido obtained depth
measurements ranging from 1.2 to 1.8 microns. He then subtracted
his thickness measurement of the top two layers (0.5 microns)
from the combined range of depth measurements for imaged features
(1.2 to 2.0 microns) to determine that imaging produced features
that extend from 0.7 to 1.5 microns into the amorphous PET.  Dr.
Gido then opined that imaging extended into the amorphous PET
because the amorphous PET partially ablated in response to heat
generated in the carbon black/nitrocellulose layer during its
ablation.  Dr. Gido did not perform any additional tests in an
effort to specifically demonstrate that PET gas molecules were

released as a byproduct of the imaging process.

**D.**   **Creo's Experts' Rebuttal**

On August 18, 2006, Creo responded with rebuttal reports
from its experts, Dr. Michael F. Rubner and Brian G. Eastman.
(Creo's Assented-To Motion For Leave To File Sur-reply, Ex. 8,
Doc. No. 74-11  ("Rubner Rebuttal"); Presstek's Sur-reply to
Creo's Motion for Summ. J., Ex. 9, Doc. No. 76-6 ("Eastman
Rebuttal")).  They reported that the actual thickness of the top
two layers of the Clarus WL is at least 2 microns thick, rather
than 0.5 microns as reported by Dr. Gido.  Dr. Gido's
measurement, they opined, undermines his conclusion that imaging
extends into the amorphous PET.  Furthermore, they claimed that
Dr. Gido had failed to offer any persuasive evidence that PET
removal results from ablation even if his depth measurements were
correct.

**E.**   **Deposition of Creo's Expert, Dr. Rubner**

On September 14, 2006, Presstek's counsel took Dr. Rubner's
deposition.  (Creo's Sur-reply to its Motion for Summ. J., Ex.
11, Doc. No. 104-17).  Presstek's counsel asked Dr. Rubner
questions about two tests that Dr. Gido had not conducted or

included in his initial report but that, unbeknownst to Creo, he would conduct the next day.  First, Presstek's counsel asked whether measuring terephthalic acid as a byproduct of imaging would indicate partial ablation of PET, to which Dr. Rubner replied yes.  Id. at 145.  Second, he asked Dr. Rubner whether optical microscopy could be used to show partial ablation of PET, to which Dr. Rubner replied no.  Id. at 146-48.

**F.   Dr. Gido's Supplemental Report**

After reviewing Presstek's expert disclosures, Presstek commissioned Dr. Gido to conduct additional testing.  On September 15, 2006, the last day scheduled for discovery, and the same day Dr. Gido completed his work, Presstek filed supplemental expert disclosures.  (Presstek's Sur-reply to Creo's Motion for Summ. J., Ex. 12, Doc. No. 76-10 ("Gido II")).

The supplemental disclosures describe several additional procedures that Dr. Gido and a new expert, Dr. Daniel J. Seyer, performed after Presstek made its initial disclosure.  As the supplemental disclosures describe, Dr. Gido took SEM micrographs of an imaged sample of the Clarus WL using a new sample preparation method and concluded that the top two layers of the product measured 1.33 microns thick, rather than 0.5 microns

-7-

thick as he had previously concluded through TEM analysis.  Dr.
Gido also used SEM to arrive at new depth measurements for
features produced by imaging.  Using this technique, Dr. Gido
concluded that the depth of features he analyzed ranged from 1.5
to 2.2 microns.  After subtracting his new thickness measurement
for the Clarus WL's top two layers (1.3 microns) from his new
range of depth measurements (1.5 to 2.2 microns), Dr. Gido
determined that the imaging process caused depressions into the
amorphous PET ranging from 0.2 to 0.9 microns, rather than from
0.7 to 1.5 microns as he had originally claimed.

     Dr. Gido also reported on two new tests that he relied on to
respond to other criticisms of his initial disclosure.
Specifically, he used optical microscopy and reviewed the results
of liquid chromatography/mass spectroscopy (LCMS) tests that had
been performed for him by Dr. Seyer.  (Gido II at ¶¶ 23-26, 27-
31).  These are the same two procedures that Presstek's counsel
had asked Dr. Rubner about during his deposition one day earlier.
Dr. Gido used these tests to confirm his initial opinion that
imaging causes the Clarus WL's carbon black/nitrocellulose layer
to fully ablate and amorphous PET to partially ablate.  Dr.
Gido's supplemental disclosure included an attached report from

Dr. Seyer, summarizing his chemical testing and analysis of debris left on the Clarus WL printing plate following laser imaging.

## G.   **The Aftermath**

On September 18 and 19, 2006, the parties exchanged letters of disagreement as to whether Presstek's September 15th reports were proper.  (Creo's Sur-reply to its Motion for Summ. J., Ex. 12-13, Doc. No. 104-18/18).  On September 19, 2006, four days after receiving Presstek's supplemental disclosures, Creo deposed Dr. Gido.  On September 26, 2006, Creo filed this motion to strike.  On September 27, 2006, Presstek offered to make both Dr. Gido and Dr. Seyer available for depositions and to permit Creo to submit a supplemental rebuttal report addressing the new report.  (Presstek's Opposition to Creo's Motion to Strike, Ex. 8, Doc. No. 98-10).  Creo declined the offer.  (Id., Ex. 9, Doc. No. 98-11).

## II.   **ANALYSIS**

Creo contends that Dr. Gido's supplemental disclosure and Dr. Seyer's supporting report should be stricken pursuant to Fed.

-9-

R. Civ. P. 37(c)(1) because they were filed after the amended discovery plan's expert disclosure deadline.  Presstek responds by claiming that the disclosures are permitted by Fed. R. Civ. P. 26(a)(2)(C) and Fed. R. Civ. P. 26(e).  Alternatively, it argues that the disclosures should not be stricken pursuant to Rule 37(c)(1) even if they were late because: (1) its delay in making the disclosures was substantially justified, (2) Creo was not unfairly prejudiced by the late disclosures, and (3) a less drastic sanction than preclusion is all that is required under the circumstances.

I begin by addressing Presstek's contention that the supplemental disclosures were timely under Rule 26(a)(2)(C) and Rule 26(e).  I then turn to the parties' arguments under Rule 37(c)(1).

**A.   Rule 26(a)(2)(C)**

Rule 26(a)(2)(C) establishes a default time line for the disclosure of expert materials.  Fed. R. Civ. P. 26(a)(2)(C). The rule provides that, "in the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial."  Id.  Disclosures intended "solely to

-10-

contradict or rebut evidence on the same subject matter identified by another party" must be filed no later than 30 days after the disclosure to which it responds, and supplemental disclosures must be made when required by Rule 26(e). <u>Id.</u> Rule 26(e) provides that supplemental disclosures must be made "at appropriate intervals" but no later than the date that final pretrial disclosures are due under Fed. R. Civ. P. 26(a)(3).

Rule 26(a)(2)(C)'s default disclosure schedule is inapplicable here because the parties specified their own dates for expert disclosures in the court-approved amended discovery plan. Under the plan, Presstek agreed to make its expert disclosures on the issue of infringement by July 21, 2006. It did not reserve the right to make additional disclosures to respond to Creo's expert disclosures. Accordingly, its September 15, 2006 disclosures were not timely unless they qualify as supplemental disclosures under Rule 26(e).

**B.    <u>Rule 26(e)</u>**

Under Rule 26(e)(1), a party has a "duty to supplement or correct" expert reports if the party learns that the original report is either "incomplete or incorrect and if the additional or corrective information has not otherwise been made known to

-11-

the other parties during the discovery process or in writing."
Fed. R. Civ. P. 26(e)(1).  The duty to supplement is intended to
benefit the recipient of the earlier disclosure by correcting
misinformation or omissions in the prior disclosure.  It "does
not grant a license to supplement a previously filed expert
report because a party wants to, but instead imposes an
obligation to supplement the report when a party discovers the
information it has disclosed is incomplete or incorrect."  Coles
v. Perry, 217 F.R.D. 1, 3 (D.D.C. 2003).

This case provides useful examples that help distinguish
cases in which supplementation is authorized under Rule 26(e)
from those where it is not.  Dr. Gido's acknowledgment in his
supplemental disclosure that the top two layers of Clarus WL were
actually 1.3 microns thick rather than 0.5 microns thick is the
type of supplemental disclosure that is contemplated by Rule
26(e).  Dr. Gido discovered that his initial measurement was
erroneous after he prepared his initial report, and his
supplemental disclosure corrects his earlier error on this point.
The remaining disclosures, in contrast, do not correct
misstatements or misleading omissions in the earlier disclosure.
Instead, they describe new work that attempts to bolster Dr.

Gido's previously disclosed opinions and immunize them from attack by Creo's experts.

Rule 26(e) cannot reasonably be read to encompass expert disclosures that merely serve to bolster previously disclosed opinions without compromising the default discovery schedule envisioned by Rule 26(a)(2)(C).[3]  Rule 26(a)(2)(C)'s default disclosure schedule draws sharp distinctions between initial disclosures, disclosures that are intended "solely to contradict or rebut evidence on the same subject matter identified by another party," and supplemental disclosures covered by Rule 26(e).  If Presstek were correct in claiming that Dr. Gido's new depth measurements and test results qualify as supplemental disclosures under Rule 26(e), then Rule 26(a)(2)(C)'s distinction between rebuttal disclosures and supplemental disclosures would be meaningless because the new depth measurements and test results rebut Creo's expert disclosures rather than correct misstatements or misleading omissions in the initial disclosure.

_____

[3]  Although, as discussed above, Rule 26(a)(2)(C)'s default schedule is inapplicable in this case, the rule remains relevant to my analysis because it is important to consider it when construing related rules such as Rule 26(e).

Presstek's reading of Rule 26(e) is also unreasonable because it is inconsistent with the rule's manifest purpose. Rule 26(e) exists to protect recipients of information. It is not designed to give producing parties a way to avoid agreed-upon discovery deadlines. Instead, if a party needs to conduct additional tests to respond to criticism leveled by an opposing party's experts after agreed-upon disclosure deadlines have passed, the proper course of action is to request a modification of the disclosure deadlines. It may not seek to achieve the same result unilaterally by waiting until the last possible moment and making its supplemental disclosure pursuant to Rule 26(e). Accordingly, while I agree that Presstek may supplement its initial disclosure to correct Dr. Gido's earlier thickness mismeasurement, I determine that Presstek's additional disclosures are not authorized by Rule 26(e).

C.   **Rule 37(c)(1)**

Rule 37(c)(1) provides in pertinent part that

> [a] party that without substantial
> justification fails to disclose information
> required by Rule 26(a) or Rule 26(e)(1) or to
> amend a prior response to discovery as
> required by Rule 26(e)(2) is not, unless such
> failure is harmless, permitted to use as
> evidence at trial, at a hearing, or on motion

> any witness or information not so disclosed.
> In addition to or in lieu of this sanction,
> the court on motion and an opportunity to be
> heard, may impose other appropriate sanctions
> . . . .

The First Circuit has recognized that "the required sanction in
the ordinary case [for a late disclosure in violation of Rule 37]
is mandatory preclusion."[4] <u>Lohnes v. Level 3 Commc'ns, Inc.</u>, 272
F.3d 49, 60 (1st Cir. 2002) (quoting <u>Klonski v. Mahlab</u>, 156 F.3d
255, 269 (1st Cir. 1998)).  This "baseline" rule, however, is
subject to exceptions.  <u>Santiago-Diaz v. Laboratorio Clinico Y De
Referencia Del Este</u>, 456 F.3d 272, 276 (1st Cir. 2006).
Preclusion generally will not be appropriate where the delay in
disclosure was either "substantially justified" or "harmless."
<u>Poulis-Minott v. Smith</u>, 388 F.3d 354, 358 (1st Cir. 2004).
Moreover, the court retains "some" discretion to impose an
alternative sanction when the totality of relevant circumstances
warrants a different approach.  <u>See</u> <u>Santiago-Diaz</u>, 456 F.3d at

---

[4]  I rely on First Circuit case law in construing Rule
37(c)(1) because the Federal Circuit generally follows the law of
the circuit in which the district court sits in resolving
questions concerning the rules of civil procedure.  <u>See</u> <u>Trilogy
Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.</u>, 109 F.3d 739, 744
(Fed. Cir. 1997).  <u>See</u> <u>also</u> <u>O2 Micro Int'l Ltd. v. Monolithic
Power Sys., Inc.</u>, 467 F.3d 1355, 1368 (Fed. Cir. 2006).

276.  Among the factors that the First Circuit has found

potentially relevant in reviewing a preclusion order under Rule

37(c)(1) are "the history of the litigation, the proponent's need

for the challenged evidence, the justification, if any, for the

late disclosure and the opponent's ability to overcome its

adverse effects."  Id. at 276-77 (quoting Macaulay v. Anas, 321

F.3d 45, 51 (1st Cir. 2003)).

Presstek argues that its supplemental disclosures should not

be precluded both because it was substantially justified in

making the disclosures after the disclosure deadline and because

its delay was harmless.  Alternatively, it claims that a sanction

less drastic than preclusion is warranted under the

circumstances.  I address each argument in turn.

1.  Substantial Justification

Presstek has failed to persuasively argue that its delay in

making the disclosures was substantially justified.  Its central

claim is that it was entitled to make the disclosure when it did

because it did not foresee the need to perform the procedures

described in the disclosures until Creo's experts attacked its

initial disclosure.  In cases such as this, however, where the

plaintiff bears the burden of proof at trial and has not itself

-16-

properly reserved the right to make rebuttal disclosures, it may not wait to fill gaps in its proof by deferring necessary tests until after the defendant has made its expert disclosures.  <u>See</u> <u>Trost v. Trek Bicycle Corp.</u>, 162 F.3d 1004, 1008 (8th Cir. 1998); James W. Moore, <u>Moore's Federal Practice</u> (3d Ed.) § 26.27[2][c].

Presstek's alternative argument that its delay is excusable because it misconstrued the discovery plan is also unavailing. The amended discovery plan established clear deadlines for expert disclosures and Presstek did not reserve the right to rebut Creo's expert disclosures.  Accordingly, Presstek is in no position to credibly claim that it was somehow misled by the amended discovery plan into a reasonable but mistaken belief that it was authorized to make the supplemental disclosures when it did.[5]

----

[5]  I also find unpersuasive Presstek's claims that its late disclosures were justified either because Creo too made late disclosures or because Presstek reserved the right to make supplemental disclosures in its initial disclosure.  The disclosures that Presstek points to were made by Creo in support of its motion for summary judgment.  However, these disclosures do not contain new information and thus they do not qualify as supplemental disclosures.  In any event, a party's failure to comply with its disclosure obligations is not excused by the opposing party's noncompliance.  <u>See</u> <u>Carney v. KMart Corp.</u>, 176 F.R.D. 227, 230 (S.D.W.Va. 1997); <u>Moore's Federal Practice</u> at § 26.27[2][c].  Finally, a unilateral reservation of the right to

2.   <u>Harmlessness</u>

Presstek argues that Creo was not harmed by the timing of the supplemental disclosures because it made the disclosures before Dr. Gido's deposition.  I disagree.

Presstek made the supplemental disclosures on the last day of the discovery period and only four days before the agreed-upon date for Dr. Gido's deposition.  Moreover, Presstek did not make the disclosures until after it had deposed Creo's experts and asked them about new tests that it was secretly planning to have Dr. Gido perform.  Moreover, the disclosures were not made until after Creo had filed its summary judgment motion and replied to Presstek's objection.  Under these circumstances, I am simply unpersuaded by Presstek's claim that the timing of its supplemental disclosures was harmless.

3.   <u>Alternatives to Preclusion</u>

Presstek argues that the supplemental disclosures should not be precluded because they describe evidence that is "highly relevant to the 'key issues' in the case" and because any harm to

---

supplement after a disclosure deadline cannot alter the agreed-upon disclosure schedule because Rule 26(a)(2)(C) permits expert disclosure schedules to be modified only by "directions from the court or stipulation by the parties."

-18-

Creo can be redressed by allowing Creo to file rebuttal expert reports, redepose Dr. Gido, and depose Dr. Seyer.  I find neither argument persuasive.

While it is true that the supplemental disclosures address evidence that might well prove crucial to Presstek's infringement claim, this fact alone does not bar preclusion of expert testimony where other factors make the sanction appropriate.  See O2 Micro Int'l Ltd., 467 F.3d at 1369 (rejecting argument that court's exclusion order was an abuse of discretion where exclusion was tantamount to dismissal); Santiago-Diaz, 456 F.3d at 277 (affirming preclusion order even though precluded testimony was vital to plaintiff's claim).  In this case, Presstek attained a significant tactical advantage by failing to make the supplemental disclosure until: (1) after summary judgment briefing was nearly complete, (2) after Creo's expert had been deposed and questioned about tests that he did not know Presstek was planning to discuss, and (3) only four days before Dr. Gido was deposed.  At this point, it is impossible to "unring the bell" by simply extending the discovery period as Presstek suggests.  Moreover, because Presstek has no good explanation for its failure to have Dr. Gido perform the tests described in the

supplemental disclosure at a time when it could have included the results in its initial disclosure, it is not unfair to subject it to the "baseline" standard of preclusion called for by Rule 37(c)(1).

### III.   <u>CONCLUSION</u>

Creo's Motion to Strike (Doc. No. 75) is granted except to the extent that it seeks to preclude Dr. Gido from testifying concerning his most recent measurements of the thickness of the top two layers of the Clarus WL.  If Creo chooses to do so, it may conduct additional discovery concerning Dr. Gido's thickness measurements and amend its own disclosures on this issue.  On or before April 13, 2007, the parties shall submit an amended discovery plan proposing dates for the completion of the discovery on this issue and the service of the supplemental disclosures that are authorized by this Memorandum and Order.

SO ORDERED.

<u>/s/ Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

March 30, 2007

cc:  Brian Comack, Esq.

Kenneth George, Esq.
Michael Kasdan, Esq.
William Lee, Esq.
Gordon MacDonald, Esq.
Nora Passamaneck, Esq.
Lisa Pirozzolo, Esq.
James Rosenberg, Esq.
Arpiar Saunders, Esq.
Michael Solomita, Esq.
S. Calvin Walden, Esq.